· HARTFORD FIRE INSURANCE COMPANY

v.

HUGH MAGEE AND HIRSH ETTLESON, COPARTNERS.

*Fire Insurance—Fraudulent Representations—Incendiary Fire.*

1. In an action brought to recover upon an insurance policy, this court finds, in view of the evidence, that a plaintiff named made fraudulent representations to the agent of defendant company as to the quantity and value of the property described in the policy, for the fraudulent purpose of obtaining excessive insurance; that such agent relied upon the truthfulness of such representations in ignorance of their falsity; that the policy thus became void and of no effect, and that the judgment against the company must be reversed.

2. This court likewise holds that such misrepresentations were not avoided by the fact that the company's agent saw the property in question. That the opportunity to ascertain the quantity and character thereof, not taken advantage of, did not purge or purify the misrepresentations, or nullify their legal effect.

[Opinion filed March 11, 1893.]

APPEAL from the Circuit Court of Richland County; the Hon. CARROLL C. BOGGS, Judge, presiding.

Messrs. DANIEL H. PADDOCK, R. B. WITCHER and JOHN LYNCH, JR., for appellant.

Messrs. R. S. ROWLAND and C. S. CONGER, for appellees.

MR. JUSTICE SAMPLE. The appellees insured 2,195 boxes of evaporated fruit, stored in a building at Noble, Illinois, for the sum of $6,000 on the 19th day of November, 1891, which were destroyed by fire on the first day of December thereafter; suit was brought on the policy of insurance, and on trial before a jury, verdict was returned for the sum of $2,325, which was sustained by the court, whereupon this appeal was taken, and the principal error assigned and discussed is, that the judgment is contrary to the evidence. The appellees started in the business of evaporating apples and other fruit at Noble on the 13th day of July, 1891, and closed down in the latter part of October. The fruit claimed to have been destroyed was stored during the latter month.

The defense interposed was that there were fraudulent representations as to the quantity of fruit in store, which, under the policy, renders it void; that the appellees, or one of them, caused or were knowing to the fire that destroyed the property, and that the verdict is excessive.

The building was unoccupied by any person, and was only used for the purpose of storing this fruit. There was no fire used in the building. It appears that no one had been in the building for several days previous to December first. That the fire was of incendiary origin is unquestionable.

The whole of the inside of the building, including the boxes, was wrapt in flames in a very few minutes, and in a short time the entire property was a smouldering ruin.

That the fruit was largely overinsured is conceded, or at least it is proven. While this fact may show an interest in the destruction of the property, it does not of itself prove

Hartford Fire Ins. Co. v. Magee & Ettleson.

who set the fire. The most serious question in this case is as to the representations that were made by Magee, at the time of the application for insurance, as to the quantity of fruit in store, viz., 2,195 boxes, and as to its value, viz., $8,780.

Appellees' counsel insist that the jury found that there were only 726 boxes of fruit in store in order to reach their verdict of $2,325. At the very threshold of their case, then, we face this state of facts: That Magee represented that he had 2,195 boxes of fruit in store upon which he applied for insurance, whereas in fact, as found by the jury, he only had 726 boxes—an excess of 1,469 boxes, or, the actual number of boxes was a little less than one-third of the number represented to be in store; that he represented the value of such fruit to be $8,780, over three times the actual value of the property.

We have diligently sought for an explanation, in the record, of these significant if not suspicious facts. The record does not clear up or solve the difficulty, but rather accentuates those facts, if only a tithe of what the witnesses say is true. Magee's statement of the loss of tags and tickets is not satisfactory. He claims to have had a partner, to whom he would necessarily have to account, and a most singular fact is, that he could not tell with a reasonable degree of definiteness, the amount of the product of his season's work, and what became of it. The books or other papers were not lost in the fire, so far as they appertain to the season's work

The large excess in quantity and value of the property insured, demanded an accounting with some degree of accuracy.

The paring and coring machine registered 31,525 baskets of apples, each holding a bushel, as the total output of the season's work. It is proven that eight, nine or ten bushels of apples can be put in a box, depending upon the pressure in packing. If we take the intermediate number, nine, as the divisor, the 31,525 baskets, or bushels, will make about 3,503 boxes of apples. The books of the railroad company, at Noble, show that there were shipped, 3,454 boxes. The

books and tickets of appellees show that they purchased 29,774 bushels of apples.

It is proven that a bushel of apples will make from five to seven pounds of evaporated fruit. Taking the intermediate number, six, and we have 3,573 boxes, at fifty pounds to the box, or if we take the highest number, seven, we have 4,107 boxes. We have under the six-pound estimate 119 more boxes than were shipped, and under the seven-pound estimate 553 more boxes. It is true Magee says he lost a lot of tags from the baskets, and tickets of purchase of the apples, but how they come to be lost he does not explain.

As before stated, the mere declaration of loss, under the peculiar circumstances of this case, is not satisfactory. The analysis of the evidence as to the capacity of the storage rooms, and the amount of fruit put in, leads to unsatisfactory results. Magee says he estimated 1,008 boxes in the rear, and over 1,100 in the front room of the building, or to be exact, 1,187 in the front room, which makes the 2,195 boxes stated in the application. He states what he *thinks* was the capacity of the storage house. The husband of the owner of the building, who had measured it, states the dimensions accurately.

The rear room, inside measure, was 14½x9x9 feet.

The front room was 15x23x9 feet.

The boxes, by measurement, were twenty-two inches long, twelve and a half wide, and twelve and a half in height, with the lid on. We will first consider the capacity of the rear room.

If the boxes were packed long way of the box and the long way of the room, there would only be seven boxes in length and a fraction over.

The ceiling being nine feet in height and the boxes being twelve and one-half inches high, only eight tiers could be put in. Even if the box was only twelve inches in height it is not probable that they could be packed so closely as to get in nine tiers. This would make 7x8=56 boxes in one row. Magee does not claim there were more than five rows. The

appellant claims there were only four rows. But assuming there were five rows and we have 5x56=280 boxes, whereas, as heretofore stated, he estimated there were 1008 boxes in the rear room. The front room had a greater capacity but it is conceded that it was but partly full. From the evidence of various witnesses it appears that there were not probably over three or four hundred boxes in that room. The evidence of apparently reliable business men who were disinterested, put the number at less than that above stated. In any event the estimate of the jury at 726 boxes was even more liberal to the appellees than we believe the evidence warrants.

It is almost inconceivable, that Magee, with his experience in packing, shipping and storing boxes of evaporated fruit, did not know whether there were 2,195 or 726, or even a less number of boxes of evaporated fruit in store, and whether that product was worth $2,325 or $8,780.

In addition to this suggestion, it is difficult to rid ourselves of the belief that he either kept some record of the storage, or had some ready means, as by the number of loads or sacks of fruit hauled from the evaporator, or the output of his evaporator, or wages paid for "facing," boxing, or some reasonable way of determining with a fair degree of accuracy, the number of boxes of fruit on hand. It appears from the evidence that he had had time to deliberate upon the matter after he had determined to insure, before the application was made. He doubtless had considered the amount of property there was in store. It is taxing human credulity beyond a reasonable limit, to try to make it appear that he did not absolutely know that there were not anything like 2,195 boxes of fruit in that storehouse, and that the estimate of that number of boxes, instead of 726 boxes, or near it, was a mere unintentional mistake, or error of judgment. It is sought to legally avoid the effect of the misrepresentations of Magee, by showing that the agent who took the insurance, saw the property. While this is true, it is clear that he relied upon the representations of Magee, as to the number of boxes of fruit in store.

There is nothing to show that he had had any experience

in estimating the quantity, or the number of boxes that could be stored in a certain space. He did not pretend to count the boxes, and did not in fact, go through the rear room of the building. He looked into some few boxes, and saw there was fruit in them, but he made no examination to determine the number of boxes. The mere fact that the agent saw the property, did not relieve Magee of the responsibility of telling the truth, so far as he knew it, unless the agent relied upon his own knowledge, or knew that Magee was not telling the truth, which is not pretended. Because the agent had the opportunity of examination, and could have determined for himself whether or not there were as many boxes in store as were claimed by Magee, and did not do so, but chose to rely only upon Magee's statement, did not relieve the misrepresentations of their wilful and intentional character. Such opportunity did not purge, or purify the misrepresentation, or nullify its legal effect. What was the purpose of the wilful misrepresentation of Magee, in his application? Without going into a detailed statement of the evidence that may be said to give character to that purpose, we are constrained to hold that the purpose was fraudulent. The case hinges upon this question, and we have, after careful consideration, determined that the evidence will warrant no other conclusion.

The fact will therefore be found and entered of record, and the case reversed without remanding.

*Judgment reversed.*